**Richard JACKSON, Petitioner–Appellant,**

v.

**ATTORNEY GENERAL OF the State of NEVADA; Farwell, Warden, Respondents–Appellees.**

No. 05–16436.

United States Court of Appeals, Ninth Circuit.

Argued Nov. 16, 2006.

Submitted Feb. 12, 2008.

Filed March 4, 2008.

Paez, Circuit Judge, filed a concurring and dissenting opinion.

Anne R. Traum, Esq., Federal Public Defender's Office, Las Vegas, NV, for Petitioner–Appellant.

Richard Jackson, Lovelock, NV, pro se.

Rene L. Hulse, Office of the Nevada Attorney General, Las Vegas, NV, for Respondents–Appellees.

Before: CANBY, COX *, and PAEZ, Circuit Judges.

## MEMORANDUM **

Richard Jackson appeals a district court decision denying his 28 U.S.C. § 2254 petition. Pursuant to a plea agreement which lessened the charges against him, Jackson pleaded guilty in Nevada state court to two counts of Sexual Assault with a Minor Under Sixteen Years of Age. At his sentencing hearing, Jackson orally moved to withdraw his guilty plea, explaining that he was dissatisfied with his attorney and wanted to go to trial. The state court refused to allow him to withdraw his plea and sentenced him in accordance with his plea agreement.

Jackson filed a state habeas petition, which a state district court denied without an evidentiary hearing. On appeal, the

---

* The Honorable Emmett Ripley Cox, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Nevada Supreme Court denied his claims on the merits. Jackson subsequently filed this 28 U.S.C. § 2254 petition, alleging nine separate claims for relief. The district court dismissed six of his claims in their entirety, and a part of another, for failure to exhaust state remedies. It then denied the remaining three claims on the merits.

The Certificate of Appealability presents three issues for appeal:

1. Whether trial counsel was ineffective in advising Jackson to plead guilty;

2. Whether trial counsel was ineffective in failing to file a notice of appeal and/or consult with Jackson on his appeal rights; and

3. Whether the legal standards applied by the Nevada state courts with regard to issue #2 conflict with those announced in the Supreme Court's decision in *Roe v. Flores–Ortega.*

### A. The guiltly plea

██ Jackson first argues that his trial counsel was ineffective for advising him to plead guilty, both because Jackson maintained his innocence and because his counsel failed to adequately investigate his case. In order to succeed on this claim, Jackson must show both that his lawyer's actions "fell below an objective standard of reasonableness", *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and, because he pleaded guilty, that there is a reasonable probability that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Addition-

ally, Jackson must overcome the strong presumption that his counsel rendered reasonable professional assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Because a state court considered his claims on the merits, Jackson must show that the state court's denial of his claim was an unreasonable application of *Strickland.* 28 U.S.C. § 2254(d); *Lockyer v. Andrade,* 538 U.S. 63, 76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). We find no error in the denial of this claim.

The Nevada district court held that Jackson's claim that his counsel failed to investigate was "entirely lacking in support" and Jackson had "not shown how further investigation would have aided his defense." (EOR 309.) The Nevada Supreme Court agreed, finding that Jackson's allegation was belied by the record. (EOR 353.) These findings have a presumption of correctness that Jackson has the burden of rebutting by clear and convincing evidence. 28 U.S.C. § 2245(e)(1). Jackson offers no basis for rebutting these findings, nor does he offer any specifics to identify how counsel failed to fulfill his obligations. Conclusory allegations that lack factual support, such as Jackson's allegations on this issue, do not provide a sufficient basis for habeas relief. *James v. Borg,* 24 F.3d 20, 26 (9th Cir.1994); *Boehme v. Maxwell,* 423 F.2d 1056, 1058 (9th Cir.1970). Thus, we find no error in the denial of this claim.

Jackson's argument that his counsel was ineffective for advising him to plead guilty despite his professed innocence is also belied by the record because he pleaded guilty while nevertheless maintaining his innocence.[1] Furthermore, in *North Car-*

---

1. Jackson's plea agreement states he was not admitting guilt. The agreement states, "I understand that my decision to plead guilty by way of the *Alford* decision does not require me to admit guilt, but is based upon my belief

that the State would present sufficient evidence at trial that a jury would return a verdict of guilty of a greater offense or of more offenses than that to which I am pleading guilty to." (EOR 189, 190.) Clearly,

*olina v. Alford,* the Supreme Court recognized that it may be in a defendant's best interest to plead guilty when he professes his innocence. 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970) (explaining that it is possible for a defendant who faces significant evidence against him but professes to be innocent to "intelligently conclude[ ] that his interests require entry of a guilty plea"). Therefore it is not necessarily ineffective assistance of counsel for an attorney to advise a client who professes his innocence to plead guilty pursuant to *Alford*; in fact, it can, at times, be the best advice counsel can offer a defendant.

For the foregoing reasons, we find no error in the conclusion that Jackson's counsel was not ineffective in advising him to plead guilty. Accordingly, Jackson has failed to show that the Nevada Supreme Court's ruling was an unreasonable application of *Strickland.*

### B. Appeal rights

■ Jackson's second argument is that his counsel was ineffective for failing to consult with him about his appeal rights. Because this claim was adjudicated on the merits in state court, 28 U.S.C. § 2254(d) forecloses relief unless the Nevada court's adjudication of his claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A state appellate court's decision on the merits in a federal habeas case is "contrary to ... established Federal law, as determined by the Supreme Court" under

§ 2254(d)(1) if the court applies an incorrect standard in reviewing the petition. *Frantz v. Hazey,* 513 F.3d 1002, 1010–12 (9th Cir.2008) (en banc). "To identify a § 2254(d)(1) 'contrary to' error, we analyze the court's actual reasoning, to the extent that the Supreme Court has dictated how a state court's reasoning should proceed." *Id.* at 1016.

The Nevada Supreme Court applied the wrong legal standard in Jackson's habeas appeal because it relied on Nevada precedent that was contrary to Supreme Court precedent. The Nevada court said:

> [T]here is no constitutional requirement that counsel must always inform a defendant who pleads guilty of the right to pursue a direct appeal unless the defendant inquires about a direct appeal or there exists a direct appeal claim that has a reasonable likelihood of success. The burden is on the defendant to indicate to his attorney that he wishes to pursue an appeal. Appellant failed to demonstrate that he inquired about a direct appeal or had a direct appeal claim that had a reasonable likelihood of success.

(EOR 352) (citing *Thomas v. State,* 115 Nev. 148, 979 P.2d 222, 223 (1999); *Davis v. State,* 115 Nev. 17, 974 P.2d 658 (1999)) (internal quotation marks omitted).

The appropriate standard that the Nevada Supreme Court should have used is set forth by the Supreme Court in *Roe v. Flores–Ortega,* 528 U.S. 470, 480, 120 S.Ct. 1029, 1036, 145 L.Ed.2d 985 (2000). In that case, the petitioner, who had pleaded guilty, alleged that his defense counsel had been ineffective in failing to file a notice of appeal. The Court held that counsel has a constitutional duty to consult with a defendant about an appeal when "there is reason to think either (1) that a rational de-

---

then, Jackson was aware that he was pleading   guilty without admitting guilt.

fendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.*

The differences between the standard announced in *Flores–Ortega* and the one used here by the Nevada Supreme Court are significant. The court said that counsel has a constitutional duty to consult with a defendant about an appeal if the defendant "inquires about a direct appeal...." (EOR 352.) But, *Flores–Ortega* holds that the duty exists where a defendant "reasonably demonstrate[s] to counsel that he was interested in appealing." 528 U.S. at 480, 120 S.Ct. at 1036. These standards are materially different; the *Flores–Ortega* standard allows for situations in which the defendant did not directly inquire about an appeal, but nevertheless demonstrated a desire to appeal through other communications with his counsel.

The Nevada Supreme Court also held that a counsel's duty to consult with a defendant about an appeal arises when "there exists a direct appeal claim that has a reasonable likelihood of success." (EOR 352.) *Flores–Ortega*, on the other hand, holds that the duty arises when "a rational defendant would want to appeal." 528 U.S. at 480, 120 S.Ct. at 1036. The Court said that "a rational defendant would want to appeal" when "there are nonfrivolous grounds for appeal." *Id.* Having nonfrivolous grounds for appeal is an easier standard to satisfy than demonstrating a reasonable likelihood of success on appeal. In fact, the *Flores–Ortega* Court observed that "[w]e expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described

will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." *Id.* at 481, 120 S.Ct. at 1037. Application of the standard that the Nevada court used here, requiring Jackson to demonstrate a "reasonable likelihood of success" on appeal, would not result in findings, "in the vast majority of cases," that counsel had a duty to consult with the defendant.

We hold, therefore, that the Nevada Supreme Court applied an incorrect standard in considering Jackson's federal habeas appeal. Section 2254(d)(1) is satisfied because the court's decision was "contrary to ... established Federal law, as determined by the Supreme Court." *See Frantz*, 513 F.3d at 1010. We proceed to review de novo the constitutionality of Jackson's state detention. When "the requirement set forth in § 2254(d)(1) is satisfied[, a] federal court must then resolve the [constitutional] claim...." *Panetti v. Quarterman*, —— U.S. ——, ——, 127 S.Ct. 2842, 2858, 168 L.Ed.2d 662 (2007). "[I]f there is [§ 2254(d)(1) ] error, we must decide the habeas petition by considering de novo the constitutional issues raised." *Frantz*, 513 F.3d at 1013. "[W]here ... § 2254(d)(1) review is satisfied, then federal habeas courts must review the substantive constitutionality of the state custody de novo." *Id.* at 1015.

■ In general, counsel has a constitutional duty to file an appeal or consult with a defendant about his right to appeal. *Flores–Ortega*, 528 U.S. at 479, 120 S.Ct. at 1035. When a defendant directs his counsel to file an appeal, his counsel is ineffective for not following those directions.[2] *See Rodriquez v. United States*,

---

2. Although Jackson now alleges that he asked his counsel to file an appeal, this allegation was never made in the state courts. Because this claim was never presented to the state

courts, the federal district court found this claim to be unexhausted and dismissed the claim. In his reply brief to this court, Jackson raises for the first time the argument that

395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969). When, as here, the defendant has not explicitly directed counsel to appeal, the analysis turns on whether counsel consulted or was required to consult with the defendant about an appeal. If counsel did not consult, we must assess the reasonableness of the failure to consult using the following test: "[Counsel must consult] when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores–Ortega*, 528 U.S. at 480, 120 S.Ct. at 1036. In making this determination, we must consider all the information Jackson's counsel knew or should have known. *Id.* A "highly relevant factor," though not a dispositive one, for determining whether a rational defendant would want to appeal is whether that defendant pleaded guilty. *Id.* Our analysis in cases such as this one in which the defendant pleaded guilty must also consider factors such as whether the plea was entered into pursuant to a plea agreement, whether the defendant was sentenced in accord with the plea agreement, and whether the plea agreement waived or reserved appellate rights. *Id.* Jackson need not show that he might have prevailed on his appeal, just that he probably would have appealed had his counsel discussed it with him. *See, e.g., United States v. Sandoval–Lopez*, 409 F.3d 1193, 1196 (9th Cir. 2005).

Under the first prong of the *Flores–Ortega* test, whether there is reason to think that a rational defendant would want to appeal, we find no merit in the conten-

tion that a reasonable defendant in Jackson's situation would want to appeal. Jackson pleaded guilty, received the benefits of pleading guilty, received the sentence agreed upon in the plea agreement, and waived all appellate rights other than those "based upon reasonable constitutional jurisdictional or other grounds that challenge the legality of the proceedings." (EOR 192.) A rational defendant in this situation would not want to appeal his conviction. As the facts before us are the same facts that were before Jackson's counsel when he made the decision not to appeal, Jackson's counsel would have had no reason to believe that a rational defendant in Jackson's situation would have wanted to appeal.

Under the second prong of *Flores–Ortega*, whether Jackson reasonably demonstrated to counsel that he was interested in appealing, we also find Jackson's claim to be without merit. Although Jackson was unhappy with some of the proceedings in the trial court, he neither alleges nor contends that he demonstrated anything beyond this unhappiness that would suggest he reasonably demonstrated to counsel a desire to appeal. Neither *Flores–Ortega* nor any other Supreme Court precedent establishes that merely expressing unhappiness at a sentencing hearing is sufficient to reasonably demonstrate an interest in appealing.

For the foregoing reasons, Jackson's counsel was not ineffective either for advising him to plead guilty or for failing to consult with him on his right to appeal.

AFFIRMED.

the district court improperly dismissed this claim from his federal habeas petition. This argument is not before us for two reasons. First, it was not certified for appeal. Second, Jackson raised it for the first time in his reply

brief. *See, e.g., Int'l Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir.1985). Therefore, we will not consider the claim that Jackson instructed his lawyer to appeal.

PAEZ, Circuit Judge, concurring and dissenting:

I concur in Part A of the majority disposition, but I respectfully dissent from Part B. In reviewing *de novo* the constitutionality of Jackson's state detention by applying the two-step *Flores–Ortega* analysis, I agree that under the first step a rational defendant in Jackson's position may not have wished to appeal, given that he had waived most of his appellate rights in the plea agreement. Under the second step, however, the record is transparent that "this particular defendant" *was* interested in appealing, therefore I dissent from the majority's analysis. I would reverse the district court judgment and remand with instructions to grant conditional habeas relief.

Prior to sentencing, Jackson unsuccessfully moved to withdraw his *Alford* plea, professed his innocence, and expressed frustration that his trial counsel had rushed him into pleading guilty without adequately developing his case and without giving him enough time to consider the benefits and drawbacks of not proceeding to trial. Moreover, Jackson's appeal waiver did not foreclose a challenge "based upon reasonable constitutional jurisdictional or other grounds that challenge the legality of the proceedings."[1] Jackson's assertions that he pleaded guilty because of his trial counsel's ineffective representation and that he was uninformed as to the possibility that his sentence would include lifetime supervision[2] constituted just such a challenge.

The majority relies heavily on language in *Flores–Ortega* that describes a defendant's decision to plead guilty as a "highly relevant factor" to the determination of whether a rational defendant would have wanted to appeal. The fact of pleading guilty is not dispositive however, because the Supreme Court's two-part test imposes a duty to consult so long as the defendant "reasonably demonstrated" his interest— rational or not—in appealing. 528 U.S. at 480, 120 S.Ct. 1029. In *Flores–Ortega*, the defendant had pleaded guilty to second-degree murder, *id.* at 473, 120 S.Ct. 1029, but rather than holding that he was *per se* barred from proving that his trial counsel had a constitutional duty to consult with him about the option of appealing, the Court articulated the two-part test and remanded with instructions to apply that test to the facts at hand.

Following *Flores–Ortega*'s clear instructions, I would hold that no professionally reasonable attorney would have failed to realize that, in light of Jackson's motion to withdraw his guilty plea, his continued profession of innocence, his dissatisfaction with his lawyer's work on his case, and his objection to the lifetime supervision provision, Jackson would have wanted to be "advis[ed] ... about the advantages and disadvantages of taking an appeal." *Id.* at 478, 120 S.Ct. 1029. In contrast to the majority's interpretation of *Flores–Ortega*, neither Jackson's guilty plea nor the appeal waiver in his plea agreement absolved Jackson's lawyer of the duty to "mak[e] a

---

1. In *United States v. Sandoval–Lopez*, 409 F.3d 1193 (9th Cir.2005), we relied on *Flores–Ortega* to hold that a defendant could show prejudice from the loss of an opportunity to appeal even when the written plea agreement contained a waiver and when the judge ascertained during the plea colloquy that the defendant understood the ramifications of that waiver. *Id.* at 1194. *See also Flores–Ortega,*

528 U.S. at 473–74, 120 S.Ct. 1029 (noting that the trial court verified that Flores–Ortega understood his limited appellate rights and the time frame for filing an appeal).

2. *See Sandoval–Lopez,* 409 F.3d at 1196 (holding that counsel should be on notice of a duty to consult when the defendant was not sentenced in accord with his plea agreement).

reasonable effort to discover [Jackson's] wishes." *Id.* at 478, 120 S.Ct. 1029; *see Sandoval–Lopez,* 409 F.3d at 1194.

I would also hold that the failure of Jackson's trial counsel to consult with Jackson about an appeal was prejudicial. To demonstrate prejudice Jackson need not show "that he might have prevailed on appeal ... just that he probably would have appealed had his lawyer asked." *Id.* at 1196. For the same reasons discussed above, the record here indicates that "but for counsel's deficient performance [in failing to consult, Jackson] would have appealed." *Flores–Ortega,* 528 U.S. at 483, 120 S.Ct. 1029 (citing *Strickland,* 466 U.S. at 668–69, 104 S.Ct. 2052).

Jackson has therefore demonstrated that he received constitutionally ineffective assistance when his trial counsel failed to consult with him about the possibility of appealing his conviction and sentence. Although a "rational defendant" in Jackson's shoes may not have wanted to appeal, Jackson's actions at the sentencing hearing would have put a professionally reasonable attorney on notice of the duty to consult with him about the benefits and drawbacks of doing so. I would therefore reverse the district court's judgment and remand with instructions to grant a conditional writ of habeas corpus, directing the state court either to release Jackson from state custody or to allow him, within a reasonable time, to perfect a direct appeal.