# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 8, 2013

No. 11-50717

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

CONG VAN PHAM,

Defendant–Appellant

Appeals from the United States District Court
for the Western District of Texas

Before WIENER, DENNIS, and OWEN, Circuit Judges.

WIENER, Circuit Judge:

Cong Van Pham ("Pham") appeals the denial of his § 2255 motion in which he asserted ineffective assistance of counsel based on his lawyer's failure to consult with him about filing a direct appeal of his sentence. We conclude that Pham reasonably expressed an interest in an appeal immediately after he was sentenced, which triggered counsel's duty to consult. We reverse and remand to give Pham an opportunity to file a direct appeal.

## I.  Facts & Proceedings

Pham is a refugee from Vietnam, speaks no English, and, until the events leading to this appeal, had no criminal record. When his wife was diagnosed with a brain tumor, Pham began cultivating marijuana to raise money for her

medical treatment. The government found over seven hundred marijuana plants in Pham's "grow house" and charged him with one count of manufacturing a controlled substance. Because of the large number of his marijuana plants, Pham faced a mandatory minimum sentence of five years. At all times, Pham communicated with counsel and the district court through a translator.

Pham pleaded guilty pursuant to a plea agreement. The agreement (1) contained an appeal waiver, (2) disclaimed any agreement "concerning any possible sentence," and (3) authorized the government to file a § 5K1.1 motion for a downward departure if it concluded that Pham had provided substantial assistance. Before Pham signed the plea agreement, his counsel explained its terms to him, including the appeal waiver. Counsel also informed Pham that he would likely receive the mandatory minimum sentence unless he fully cooperated with the government. Counsel knew that, despite his admonitions, Pham continued to hope for a sentence of probation so that he could care for his wife.

The probation office calculated Pham's Guidelines range to be 30 to 37 months but recommended the five-year statutory mandatory minimum. It declined to recommend eligibility for the § 5C1.2 safety valve, which, if accepted by the court, would have nullified the mandatory minimum, because the government did not believe Pham's claims that he had acted alone, thus negating § 5C1.2(a)(5)'s requirement of full disclosure. Pham met all other requirements of the safety-valve provision.

At sentencing, Pham's counsel argued for application of the safety valve to bypass the mandatory minimum sentence and for a departure downward to a term of probation only because Pham's wife and children needed his care. The government reiterated that it did not believe Pham had been truthful about acting alone and therefore did not move for a §5K1.1 downward departure. The

district court concluded that Pham did not qualify for the safety valve and sentenced him to the statutory mandatory minimum of five years' imprisonment.

Through an interpreter, Pham spoke with his counsel immediately after sentencing. We recite the nature and content of that conversation in light of the district court's credibility findings, which are supported by the record and which Pham does not challenge on appeal. When sentenced, Pham was visibly upset at receiving a prison sentence instead of probation; he said that a prison sentence would kill his wife, who relied on his care; and, while his wife cried nearby, Pham spoke with his counsel and "brought up that he was concerned about getting 60 months and wanted to do something to get less time." Counsel responded to Pham that if he would cooperate with the government, he might receive a reduced sentence pursuant to Federal Rule of Criminal Procedure 35. At no point after sentencing, however, did counsel mention or discuss the possibility of a direct appeal, and no notice of appeal was filed.

Pham later filed a § 2255 habeas corpus petition to vacate his sentence, contending that counsel was constitutionally ineffective because he failed to consult with Pham about an appeal after he was sentenced. The magistrate judge held an evidentiary hearing, assessed witness credibility, and recommended denying the petition. The district court overruled Pham's objections to that recommendation, denied his petition, and denied a certificate of appealability. We granted such a certificate on "whether the district court was correct in determining that Pham's counsel was not ineffective because counsel did not consult with him about filing a direct appeal."

## II.  Analysis

A.    Standard of Review

No. 11-50717

We review *de novo* a district court's conclusions on a § 2255 petition based on ineffective assistance of counsel.[1]  We review findings of fact for clear error.[2]

B.     Applicable Law

The Sixth Amendment guarantees "reasonably effective" legal assistance.[3] To show ineffective assistance, the two-prong *Strickland* test requires a defendant to show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) such deficient performance prejudiced the defendant.[4]  In *Roe v. Flores-Ortega*, the Supreme Court elucidated how the *Strickland* test applies in the context of counsel's failure to file an appeal "when the defendant has not clearly conveyed his wishes [regarding an appeal] one way or the other."[5]

Under *Flores-Ortega*, the first *Strickland* prong begins with the question whether counsel "consulted" with the defendant regarding an appeal.[6] "Consulting" is a term of art that means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."[7]  "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel

---

[1] *United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005).

[2] *Id.*

[3] *See United States v. Strickland*, 466 U.S. 668, 687-88 (1984).

[4] *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000).

[5] *Id.* at 477.

[6] *See id.* at 478.

[7] *Id.*

4

performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."[8]

If, however, counsel failed to consult with the defendant about an appeal, then the question is whether that failure was unreasonable because it breached the duty to consult. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."[9] The existence of a duty to consult is assessed in light of "all the information counsel knew or should have known."[10] Whether the conviction followed a trial or a guilty plea is "highly relevant," although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained.[11] The Supreme Court predicted that district courts would find a duty to consult "in the vast majority of cases."[12]

Finally, under *Flores-Ortega*, a defendant satisfies the second *Strickland* prong if he shows "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."[13] The defendant does not have to show that "his hypothetical appeal

---

[8] *Id.*

[9] *Id.* at 480.

[10] *Id.*

[11] *Id.*

[12] *Id.* at 481.

[13] *Id.* at 484.

might have had merit."[14]  This second-prong prejudice test "applies even where a defendant has waived his right to direct appeal and collateral review."[15]

C.     Analysis

The result of the first step in the *Flores-Ortega* reasonableness analysis is clear on these facts: Pham's counsel did not sufficiently consult with him about filing an appeal.  At most, Pham's counsel discussed an appeal in the abstract and even then did so only *before* the sentence was pronounced.  But *after* sentencing, when the sentence actually imposed became known and the time period for filing a notice of appeal began to run, counsel neither mentioned the possibility of an appeal at all nor made any effort to discover Pham's wishes in that regard.[16]  By proceeding to consider whether Pham's counsel had a duty to consult under *Flores-Ortega*'s second step, the district court implicitly held that Pham's counsel failed to consult with him about an appeal in any meaningful way.

With that established, we next assess whether counsel's failure to consult breached a constitutional duty.  Pham contends that he reasonably demonstrated to counsel that he was interested in appealing, thus giving rise to counsel's duty to consult.[17]  We have had few opportunities to address just how a defendant may reasonably demonstrate to counsel his interest in appealing.

---

[14] *See id.* at 486.

[15] *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

[16] We do not mean to impose a "mechanical rule" that consultation must always follow sentencing.  We can imagine circumstances in which the bulk of a constitutionally satisfactory consultation about an appeal will necessarily precede sentencing, perhaps in connection with a Rule 11(c)(1)(C) plea agreement that reduces any uncertainty in the Guidelines calculation or sentence.  In this case, however, counsel's cursory discussion *before* sentencing did not compensate for the complete failure to mention the possibility of appeal *after* sentencing.

[17] *See Flores-Ortega*, 528 U.S. at 480.  He does not contend that a rational defendant in his position would have wanted to file an appeal.

No. 11-50717

In *United States v. Casarez*, an unpublished opinion, we held with little elaboration that counsel had no duty to consult when the defendant "was upset about sentencing matters before and after the sentencing hearing, [but] did not express to counsel any interest in appealing the sentence" in subsequent conversations.[18] Other circuits have required more of defendants than "merely expressing unhappiness at a sentencing hearing,"[19] and have found a duty of counsel to consult with the defendant about an appeal "usually because the defendant *said something* to his counsel indicating that he had an interest in appealing."[20] Thus, courts have found a duty to consult when, for example, a defendant who received consecutive sentences asked "'about having time run together,'"[21] and when a defendant asked after sentencing "what's next? What can we do now?"[22]

With those cases in mind, we turn to the discrete facts of this appeal. Pham's counsel knew that Pham had hoped to receive a sentence of probation only. When that hope did not materialize, a visibly upset Pham "brought up that he was concerned about getting 60 months and wanted to do something to get less time." This was ample demonstration of Pham's interest in doing something to change the outcome of his sentencing through additional proceedings. We hold that this statement to counsel, when viewed in context, was enough to trigger counsel's constitutional duty to consult with Pham about an appeal.

In concluding otherwise, the district court misconstrued the facts and placed too much weight on marginally relevant factors. The district court erred

---

[18] 304 F. App'x 325, 325 (5th Cir. 2008).

[19] *See Jackson v. Att'y Gen. of Nev.*, 268 F. App'x 615, 620 (9th Cir. 2008).

[20] *See United States v. Cooper*, 617 F.3d 307, 313 (4th Cir. 2010) (emphasis added).

[21] *See Frazer v. South Carolina*, 430 F.3d 696, 702, 712 (4th Cir. 2005).

[22] *See Palacios v. United States*, 453 F. App'x 887, 889 (11th Cir. 2011).

first when it concluded that Pham's post-sentencing statement demonstrated interest in a Rule 35 sentence reduction but not in an appeal. We disagree that a lay defendant, particularly one who speaks no English, must incant the magic word "appeal" to trigger counsel's duty to advise him about one.[23] Just as it is part of counsel's duty to recognize when a rational defendant would want to appeal, so too is it part of his duty to recognize when, however inartfully or inarticulately, his client demonstrates an interest in an appeal. If, in this instance, it was counsel's professional opinion that a Rule 35 motion would be a better option than an appeal, he should have given that advice only after consulting with Pham about his options; counsel's professional opinion eschewing appeal does not excuse failure to consult altogether.[24]

Second, although Pham's guilty plea and appeal waiver are relevant factors under the *Flores-Ortega* analysis, the district court misconstrued their significance in this case. A guilty plea is relevant because it "*may* indicate that the defendant seeks an end to judicial proceedings."[25] But Pham's desire to avoid a trial cannot be interpreted to mean that he would accept any sentence imposed; it certainly does not change the unambiguous import of his post-

---

[23] *Cf. Palacios*, 453 F. App'x at 889 (finding duty to consult because defendant asked "What can we do now?").

[24] *Cf. Thompson v. United States*, 504 F.3d 1203, 1207 (11th Cir. 2007) ("Simply asserting the view that an appeal would not be successful does not constitute 'consultation' in any meaningful sense."). Neither can we agree with the district court's reasoning that Pham's specific desire to serve less time did not give rise to a duty for counsel to consult about an appeal because an appeal would not have reduced his sentence and could have increased it. First, an appeal of a sentence plainly can result in a reduced sentence on remand; for example, in this case, a successful appeal of the district court's safety-valve finding would have bypassed the mandatory minimum on resentencing. Second, it is difficult to see in this case how an appeal, successful or otherwise, would have resulted in a harsher sentence; Pham's Guidelines range was approximately half of the mandatory minimum. And even if there were such a risk, that is a topic that should have been addressed during the consultation, not an excuse to forego it.

[25] *Flores-Ortega*, 528 U.S. at 480 (emphasis added).

sentencing statements and demeanor. Neither is the appeal waiver in his plea agreement dispositive.[26] The guilty plea and appeal waiver might have limited Pham's appellate options, but they did not relieve counsel of the duty to consult about those options once Pham had reasonably demonstrated his interest in an appeal.

Third, the district court drew a number of incorrect legal conclusions and factual inferences. For example, the court erroneously stated that "Pham received the 60-month sentence he bargained for as part of the plea agreement." Sixty months was the statutory minimum, and, perhaps Pham should even have expected that sentence, but he did not bargain for it with the government.

The district court also found significant that Pham's reason for wanting a shorter sentence was because his children are young and his wife is ill, not because he perceived any legal or factual error in the sentence imposed. This might be highly relevant as to whether a rational defendant with a non-frivolous basis would want to appeal, but it is minimally relevant to what this particular defendant actually demonstrated to counsel.[27] And the district court erred by placing any significant weight on the fact that Pham did not demonstrate an interest in an appeal *before* he was sentenced. Although his chances might be viewed as slim, Pham could have qualified for the safety valve or a § 5K1.1 downward departure, which in turn could have accomplished his desire not to serve prison time and thereby pretermit any need to appeal. Thus, Pham had no reason to demonstrate an interest to appeal a sentence that had not yet been imposed.

---

[26] *See id.* (listing appeal waiver as a relevant factor to be considered)

[27] The district court's reasoning also seems circular. It was the *failure to consult* that deprived Pham of any information about the potential availability or merits of appeal, so the lack of that information cannot be used to justify the very failure to consult that deprived him of it.

No. 11-50717

In sum, Pham's post-sentencing statement to counsel and his demeanor when uttering it reasonably demonstrated his interest in appealing his sentence, such that counsel had a duty to consult with Pham about an appeal. We can identify no factors that take this case out of the "vast majority" in which counsel has a duty to consult.[28] Because counsel failed to consult with his client about an appeal, counsel's performance was objectively unreasonable under *Flores-Ortega.*

The second *Strickland* prong—prejudice—is even more easily resolved. The district court made no findings as to prejudice and the government did not brief prejudice on appeal. In the absence of any self-evident reason why Pham would not have filed a direct appeal, and without any regard to the potential merits of such an appeal, we conclude that he has established prejudice under *Flores-Ortega.*[29]

### III. Conclusion

Pham has shown that he was prejudiced by his counsel's constitutionally ineffective failure to consult with him about an appeal. Accordingly, we REVERSE the district court's denial of Pham's § 2255 motion and REMAND to the district court "with instructions to dismiss *without prejudice* that part of the § 2255 motion for which the out-of-time appeal was granted, to grant an out-of-time appeal, and to reinstate the criminal judgment on the docket."[30]

---

[28] *Id.* at 481.

[29] *See id.* at 484, 486.

[30] *See United States v. West*, 240 F.3d 456, 462 (5th Cir. 2001).